IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JILLIAN WATKINS,

                Plaintiff,

v.                                       CIVIL ACTION NO.   3:22-0109

LINCARE INC.,

                Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Dismiss Complaint. ECF No. 6. Defendant argues that Plaintiff cannot be considered a "health care worker" under the West Virginia Patient Safety Act (WVPSA), that Defendant's customers cannot be considered "patients" under the Act, and that Plaintiff is not entitled to emotional distress damages. For the following reasons, the Court **DENIES, in part, and GRANTS, in part,** Defendant's Motion. ECF No. 6.

### BACKGROUND

Plaintiff filed her Complaint with this Court on March 2, 2022, alleging that Defendant LinCare, Inc. took discriminatory actions and/or reprisal against her in violation of the WVPSA. ECF No. 1, ¶ 1. Plaintiff states that her role involved duties including: caring for the needs of patients through direct patient care, providing administrative support, making deliveries, providing customer service, and directing some of the day-to-day operations of the facility. *Id.* ¶ 9. She details how she aided patients directly by:

- Instructing patients regarding maintenance and handling of medical devices, including equipment such as tubes, masks, filters, canes, wheelchairs, nebulizers, nasal cannula, and/or oxygen tanks
- Delivering oxygen tanks
- Consulting patients telephonically regarding oxygen supply
- Replacing oxygen tanks
- Evaluating patients to fit for wheelchairs
- Telephonically troubleshooting issues with CPAP machines, MdINR devices, and medical beds
- Providing emotional support to patients who struggled with using medical devices

*Id.* ¶ 10. Plaintiff also assisted with the day-to-day operations of Defendant's Huntington facility. *Id.* ¶ 11.

Plaintiff performed three audits of Defendant's ventilators and CPAP machines by reviewing patient files. *Id.* ¶ 12. During the first audit in March of 2020, Plaintiff noticed that a therapist employed by Defendant, Andrea McClung, had not performed status updates on patients' medical devices, yet the therapist reported that she had performed such checks. *Id.* ¶ 14. She also noticed that status reports were done on medical devices more frequently than is the policy, which she believed was done to "pad" logging of time. *Id.* ¶ 15. Plaintiff also noticed other issues during her audit, such as that some medical devices had not been used by patients for several months, and that some required services were not being provided. *Id.* ¶ 16. When Plaintiff noticed such issues, she required the therapist to correct the representation in the files. *Id.* ¶ 17. She also reported these issues to the Regional Healthcare Manager. *Id.* ¶ 18.

During the second audit in Summer 2020, Plaintiff again noticed that McClung continued to improperly report status updates, document services that were not provided, leave devices in homes that were not used but still billed, and change settings on devices that had not been ordered or prescribed by a physician. *Id.* ¶ 23, 28. Plaintiff informed the Regional Healthcare Manager again, but was told that these issues could not be addressed. *Id.* ¶ 30. Plaintiff then contacted the Human Resources Department and requested permission to terminate McClung, but instead was

directed to write her up. *Id.* ¶ 31.

During the third audit in October 2020, Plaintiff again found that patients' medical devices were being unused and the insurance providers were being billed. *Id.* ¶ 33. McClung's fraudulent documenting issues persisted. *Id.* ¶ 34. Plaintiff informed the Regional Healthcare Manager of the ongoing issues but the Manager failed to take any meaningful action. *Id.* ¶ 37. Plaintiff also requested permission again from Human Resources to terminate McClung, and the representative indicated that the department was working on the request. *Id.* ¶ 39. Ultimately, McClung left Defendant's employment in November 2020. *Id.* ¶ 43. Meanwhile, Plaintiff continued to raise issues with the Regional Manager. *See id.* ¶ 45. On or about January 7, 2021, an Area Manager came to the Huntington facility and collected all documents to send to the corporate center. *Id.* ¶ 46.

Plaintiff was terminated by Defendant on or about January 8, 2021—approximately one year after she made her first complaints known. *Id.* ¶ 47. Plaintiff filed this action on March 2, 2022, alleging retaliation under the West Virginia Patient Safety Act (WVPSA). *Id.* ¶¶ 48–53.

## STANDARD OF REVIEW

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563. In its place, courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the

speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of

truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

## DISCUSSION

Plaintiff's sole claim against Defendant arises under the WVPSA. ECF No. 1. She asserts that Defendant provides healthcare services and is a healthcare entity as contemplated by W. Va. Code § 16-39-3(6). ECF No. 1 ¶ 49. She also describes herself as a healthcare worker that provided direct patient care while employed by Defendant as contemplated by W. Va. Code §§ 16-39-3(7) and 16-39-3(3). *Id.* ¶ 50. She alleges that Defendant retaliated against her by terminating her in violation of the WVPSA. *Id.* ¶ 52.

Defendant asserts several arguments to support its Motion to Dismiss. The Court will address each.

1. <u>Defendant argues that Plaintiff is not a "healthcare worker" under the WVPSA</u>

The WVPSA states that: "No person may retaliate or discriminate in any manner against any healthcare worker because the worker, or any person acting on behalf of the worker… [m]akes a good faith report, or is about to report, verbally or in writing, to the health care entity or appropriate authority an instance of wrongdoing or waste." W. Va. Code § 16-39-4(a)(1). Any such healthcare worker who believes they have been retaliated or discriminated against may file a civil action. *Id.* § 16-39-6(a).

The statute defines a "healthcare worker" as:

> a person who provides direct patient care to patients of a health care entity and who is an employee of the health care entity, a subcontractor, or independent contractor for the health care entity, or an employee of the subcontractor or independent contractor. The term includes, but is not limited to, a nurse, nurse's aide, laboratory technician, physician, intern, resident, physician assistant, physical therapist, or any other person who provides direct patient care.

*Id.* § 16-39-3.[1] The statute further defines "direct patient care" as "health care that provides for the physical, diagnostic, emotional, or rehabilitational needs of a patient or health care that involves examination, treatment, or preparation for diagnostic tests or procedures." *Id.*

Defendant asserts that Plaintiff cannot be considered a healthcare worker under the statute because she did not provide direct patient care. Plaintiff describes her duties while she worked for Defendant in her Complaint. She alleges that she provided for the physical, emotional, and rehabilitative needs of Defendant's patients. Specifically, she argues she provided for patients' physical needs by ensuring they had sufficient oxygen supplies, ensuring that tubing was not obstructed. She also asserts that she helped assess patient needs with respect to wheelchairs, canes, walkers, CPAP machines, and MdINR devices. She asserts that by assisting the patients with medical devices, she provided for patient's physical needs, and therefore, provided "direct patient care." She also alleges that she counseled and provided emotional support to patients who were struggling to use medical devices.

It does not appear to this Court that there is caselaw that expands upon the scope of what is considered a "healthcare worker" or what constitutes "direct patient care" as contemplated under the WVPSA. The Court must accept the factual allegations in the Complaint as true. Plaintiff asserts that she provided direct patient care by troubleshooting and assisting patients with their medical devices and by providing emotional support to patients. Accepting these assertions as true, at this stage, the Court finds that Plaintiff has sufficiently alleged that she is a healthcare worker that has provided direct patient care under the WVPSA.

2. Defendant argues that its customers are not considered "patients" under the WVPSA

Defendant also asserts that Defendant's customers that Plaintiff interacted with are not

---

[1] This section was amended and reenacted. W. Va. Legis. H.B. 4257 (2022).

"patients" under the WVPSA. The Act was amended in 2021, and the amended Act added a definition for the term "patient," which is used extensively throughout the text. This was the first time that the term was defined in the Act. The amendment states that a "patient" include "a person living or receiving services as an inpatient at a healthcare facility." W. Va. Code § 16-39-3. Defendant asserts that, under this definition, its customers are not considered "patients" under the Act, and thus, Plaintiff cannot state a claim under the WVPSA.

Plaintiff points out that the amendment to the WVPSA occurred after Defendant terminated Plaintiff and argues that this amendment cannot be applied retroactively. Federal courts must apply state law when determining whether a state statute should be applied retroactively. *See McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 974 (4th Cir. 2020) ("Federal courts sitting in diversity 'are to apply state substantive law and federal procedural law.'" (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). Retroactive application of an amendment is generally disfavored, and "[i]n West Virginia, '[a] statute that diminishes substantive rights or augments substantive liabilities should not be applied retroactively to events completed before the date of the statute… unless the statute provides explicitly for retroactive application.'" *Biser v. Mfrs. and Traders Trust Co.*, 211 F. Supp. 3d 845, 852 (S.D.W. Va. 2016) (quoting Syl. pt. 2, *Pub. Citizen, Inc. v. First Nat. Bank in Fairmont*, 480 S.E.2d 538 (W. Va. 1996)).

The application of this amendment would affect Plaintiff's substantive rights, as evidenced by Defendant's reliance on the amendment to dismiss Plaintiff's claim. Further, the legislature did not explicitly call for the retroactive application of the amendment. While Defendant asks the Court to narrowly interpret the WVPSA, the Court cannot apply the definition of "patient" in its consideration of the Motion because of the implication to Plaintiff's rights.

3. <u>Defendant argues Plaintiff cannot recover emotional distress damages</u>

Defendant asks this Court to preclude Plaintiff from seeking general emotional damages based on this Court's decision in *Hawley v. Hospice of Huntington*, No. 3:19-0759, 2021 WL 4783633 (S.D.W. Va. Oct. 13, 2021). In that case, the Court relied on *Mace v. Charleston Area Medical Center Foundation, Inc.*, to hold that emotional damages are not recoverable under the WVPSA. *Id.* at *1. The Court reasoned that emotional distress damages can essentially "assume the cloak of punitive damages, and because punitive damages are not allowed under the WVPSA, emotional damages are not recoverable under WVPSA claims." *Hawley*, 2021 WL 4783633, at *1.

The WVPSA states that:

> A court, in rendering a judgment for a complainant in an action under this article, shall order, as the court considers appropriate, reinstatement of the health care worker, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages or any combination of these remedies.

W. Va. Code § 16-39-6.

Plaintiff here asks the Court to award damages for loss of dignity, embarrassment, humiliation, aggravation, and emotional distress, in addition to the past and future economic losses she suffered. The Court considers these general, emotional-type damages inappropriate to award for a violation of the WVPSA. Thus, Plaintiff is precluded from seeking these damages.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **DENIED, in part, and GRANTED, in part**. ECF No. 6. While Plaintiff's WVPSA claim survives the Motion to Dismiss, she is precluded from seeking general emotional-type damages.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

-9-

    ENTER:    May 26, 2022

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

-9-