IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**JILLIAN WATKINS,**

    **Plaintiff,**

v.                                                                          Case No.: 3:22-cv-00109

**LINCARE, INC.,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

On February 15, 2023, the parties appeared, by counsel, for a hearing on Plaintiff's Motion to Compel Discovery Responses from Defendant Lincare, Inc., (ECF No. 39). The Court directed the parties to confer after the hearing regarding some of the issues raised in the motion, and the parties advised the Court by telephone on February 24, 2023, regarding the status of the discovery disputes. As specified below, the Court **GRANTS**, in part, and **DENIES**, in part, the motion to compel. The parties shall bear their own costs and attorney fees associated with this motion and any discovery compelled by this order.

**I.**     **Relevant Facts**

    *A. Complaint*

On March 2, 2022, Plaintiff filed the instant lawsuit against Defendant, her former employer. (ECF No. 1). According to the Complaint, Defendant is a corporation which provides in-home respiratory therapy products and services. (*Id.* at 2). Plaintiff was employed since 2006 by All Med, which was purchased by Defendant in 2017, and Plaintiff's employment continued uninterrupted as the Center Manager of Defendant's

Huntington facility after the purchase. (*Id.*). Plaintiff alleges that in or around March 2020 she audited patients' ventilator files, known internally as "red files," and she discovered that respiratory therapist Andrea McClung ("McClung") was fraudulently documenting "tickets" that she performed ventilator/CPAP checks that she had not performed. (*Id.* at 4-5). The purpose of the status checks was to determine if the patients were still using their devices safely and properly as prescribed; if they were, insurance was billed for the continued use of the device on a monthly basis. (*Id.*). Plaintiff also allegedly discovered during the audit that (1) ventilator/CPAP checks were sometimes documented every two to three days to "pad" the logging of time for Defendant's CPAP percentage policy, (2) there were medical devices in patients' homes that were not used for several months; and (3) certain required services were not being provided. (*Id.* at 5).

Plaintiff purportedly required the therapist to correct each erroneous "ticket" concerning the status checks, and she reported the transgressions to Defendant's Regional Healthcare Manager, Sherry Robinson ("Robinson"). (*Id.*). Plaintiff claims that she was concerned about the safety of patients who were not receiving necessary treatment and the liability of falsely billing insurance providers. (*Id.*).

In the summer of 2020, Plaintiff performed a second audit of the patients' red files. (*Id.* at 6). By that time, Defendant had transitioned from physical paper files to electronic files administered through the LinCare Vent App or "Lite." (*Id.*). The App recorded, among other things, the specific hours that patients actually used the medical devices. (*Id.*). Plaintiff allegedly discovered that McClung continued to improperly report ventilator/CPAP status checks in the red files and on the App. (*Id.*). Specifically, Plaintiff noted that approximately ten patients were not using their medical devices, but their

2

insurers continued to be billed for the devices. (*Id.*). Plaintiff called those patients to confirm that they were not using their devices. (*Id.*). For any device that was not being used or which the patient requested that it be removed, Plaintiff placed "pick up orders" with Defendant's Discharge Department. (*Id.* at 7). However, according to Plaintiff, instead of picking up the devices, the Discharge Department persuaded nearly all of the patients to keep their devices even though they were not using them. (*Id.*). Plaintiff also noticed that McClung changed settings on CPAP/ventilators that had not been ordered or prescribed by a physician. (*Id.*). Plaintiff again reported her audit findings to Robinson, who advised Plaintiff to contact the Human Resources Department ("HR"). (*Id.*). Plaintiff asked HR for permission to fire McClung for fraudulent record keeping and for changing CPAP/ventilator settings, but HR recommended a "write up" instead. (*Id.*).

In approximately October 2020, Plaintiff performed a third audit of the red files and corresponding App. (*Id.*). Plaintiff found that the number of devices that were not being used but were being billed had increased to 20. (*Id.* at 8). In addition, Plaintiff discovered that McClung continued to document status checks that she did not perform and change settings on CPAP/ventilator machines without a physician's order or prescription. (*Id.*). Plaintiff reported her findings to Robinson, who again advised her to contact HR. (*Id.*). Plaintiff then asked HR for permission to terminate McClung, and she was advised that Defendant was considering her request, which had been sent to Saundra Moreau, Regional Healthcare Manager ("Moreau"). (*Id.* at 9). For one more month, McClung continued to falsely document patient care as Plaintiff awaited a response from HR. (*Id.*).

In November 2020, Robinson conducted upon the request of Moreau her own audit of the CPAP/ventilator files at the Huntington facility. (*Id.*). Concurrently, unbeknownst to Plaintiff, the West Virginia Board of Respiratory Care ("WVBRC") investigated Defendant due to complaints that were filed. (*Id.*). On November 17, 2020, McClung left her employment with Defendant. (*Id.*). In December 2020, Plaintiff contacted Robinson concerned that Defendant did not have the proper forms to code a patient's ventilator that was ordered, and Robinson said not to worry about it at that time. (*Id.* at 10). Plaintiff also related other patient safety concerns to Robinson, including a concern that a vest used to break up lung congestion in a patient's lungs had not been properly fitted. (*Id.*). On or about January 7, 2021, William Reynolds, Area Manager, came to the Huntington facility to collect documents for the compliance department and overnight them to the corporate center. (*Id.*). The following day, on January 8, 2021, Plaintiff was terminated. (*Id.*).

Thereafter, Plaintiff filed her Complaint alleging a single claim. (*Id.* at 10-11). She contends that Defendant retaliated against her by terminating her employment because she reported in good faith wrongdoing contemplated by the West Virginia Patient Safety Act, W. Va. Code §§ 16-39-3(7), 16-39-3(3). (*Id.*).

### B. *Motion to Compel*

On November 16, 2022, Plaintiff filed a Motion to Compel discovery responses from Defendant. (ECF No. 39). Plaintiff argued that Defendant provided insufficient responses to interrogatory numbers 4 and 11 and request for production of documents numbers 30 through 41. (ECF No. 39 at 1). In addition, Plaintiff alleged that Defendant improperly asserted the attorney-client privilege for patient refund documents and

4

compliance investigation documents. (ECF No. 40 at 18-20). After a change in counsel and a brief extension in time to respond, Defendant filed a response to the motion, (ECF No. 56), to which Plaintiff filed a reply, (ECF No. 58). Defendant filed a surreply with leave of Court. (ECF No. 67). As noted, the parties participated, by counsel, in a motion hearing on February 15, 2023 and a telephone conference with the Court on February 24, 2023 regarding the status of the discovery disputes. The issues have been largely resolved, as follows.

## II. <u>Discussion</u>

### *A. Interrogatory No. 4*

This interrogatory concerns Plaintiff's job performance expectations, how those expectations were documented or communicated, and anything that Plaintiff did that failed to meet the expectations. Plaintiff's counsel advised during the hearing that the dispute concerning this discovery request is resolved as a result of Defendant's supplemental responses and an agreement between the parties. Therefore, the Court **DENIES** the motion to compel, in part, as moot concerning interrogatory number 4.

### *B. Interrogatory No. 11*

This interrogatory asks Defendant to provide information concerning any complaints against its employees over the past 10 years through the date of trial regarding fraudulent billing of services or equipment not rendered, fraudulent documentation in patient records, patients not wanting to keep their equipment but persuaded by Defendant to keep it, and/or inadequate medical care rendered by Defendant. As discussed during the hearing, the Court concluded that this information was discoverable, but the scope of the request was overly broad. The parties were given a little over a week

after the hearing to meet and confer regarding this discovery request to discuss agreeable parameters. Counsel advised by telephone that the parties agreed to limit the request to the geographic territory of Lincare employee Will Reynolds for the time frame of January 1, 2017 through January 8, 2021. Plaintiff's counsel advised that the dispute concerning this interrogatory is resolved. Therefore, the Court **DENIES** the motion to compel, in part, as moot concerning interrogatory number 11.

### C. *Request for Production of Documents Nos. 30 and 31*

These requests seek documents made by Defendant's Discharge Department to pick up devices and any cancelations of those pick-up requests during Plaintiff's employment. The parties advised the Court during the telephone conference on February 24, 2023 that they agreed to limit the scope of this request to pick up or cancelations of ventilators and/or oxygen-concentrator equipment at the Huntington center from March 1, 2020 through Plaintiff's discharge date on January 8, 2021. Plaintiff's counsel advised that the motion to compel regarding these requests for production is resolved at this point. If further discovery reveals that broader discovery is needed outside of the Huntington location, the parties will revisit the issue. Therefore, the Court **DENIES** the motion to compel, in part, as moot concerning requests for production of documents numbers 30 and 31.

### D. *Request for Production of Documents Nos. 32 through 37*

These requests seek information concerning respiratory therapist McClung, who was the subject of most of Plaintiff's patient safety complaints. Specifically, Plaintiff asks for the following documents:

> **Request No. 32:** physical files, including the "red files," for patients seen by McClung through the Huntington facility;

**Request No. 33:** electronic files, including the contents of the vent app identified in the complaint, for patients seen by McClung through the Huntington facility;

**Request No. 34:** "delivery tickets" of patients seen by McClung;

**Request No. 35:** Motus tracking system documents regarding McClung;

**Request No. 36:** anything indicating the respiratory prescriptions, addresses, and respiratory medical devices used by McClung's patients; and

**Request No. 37:** McClung's route sheets.

(ECF No. 39 at 26-28).

During the hearing, Plaintiff's counsel advised the Court that the disputes concerning Request for Production of Document numbers 32 and 36 were resolved. As to the other requests, Plaintiff's counsel advised that Plaintiff intended to collect information to prove that Plaintiff made good faith reports of wrongdoing under the Patient Safety Act. The possibility of a stipulation to that effect was discussed, and the parties were instructed to meet and confer regarding whether Defendant could stipulate to certain facts to obviate the need for Plaintiff to collect documents. As indicated during the subsequent telephone conference on February 24, 2023, the parties were unable to agree upon wording of a stipulation. However, they resolved the discovery dispute concerning these requests for production of documents by limiting the time frame to March 1, 2020 to January 8, 2021. Therefore, the Court **DENIES** the motion to compel, in part, as moot concerning requests for production of documents numbers 32 through 37.

### E. *Request for Production of Documents No. 38*

This request asks Defendant to produce all correspondence to or from Plaintiff regarding McClung. Defendant objected that the discovery request was overly broad and

7

unduly burdensome. During the hearing, the parties agreed to confer regarding this dispute. Plaintiff's counsel advised the Court by telephone on February 24, 2023 that the matter is resolved. The parties agreed to limit the scope of the request to eight topics, which were documented in an email between the parties on February 23, 2022, for the time period of March 1, 2020 to January 8, 2021. Therefore, the Court **DENIES** the motion to compel, in part, as moot concerning request for production of documents number 38.

### F.  *Request for Production of Documents No. 39*

This request asks Defendant to produce all documents identifying its Center Managers in West Virginia and whether they were licensed respiratory therapists. According to Plaintiff's counsel, the purpose of the discovery request is to collect comparator information regarding center managers who performed unauthorized actions as non-licensed respiratory therapists, but they were not fired like Plaintiff. The ultimate goal would be to show that Defendant's stated reason for Plaintiff's termination was pretextual.

As indicated during the hearing, the Court finds that this discovery request is not reasonably calculated to lead to the discovery of admissible evidence and is overly broad. It primarily asks Defendant to produce documents to prove a negative that the manager was not a licensed respiratory therapist. Further, if any center managers were licensed respiratory therapists, the discovery request could solicit a wide range of documents that are not relevant or proportional to the needs of the case. After considering the parties' briefs and arguments during the hearing, the Court **DENIES** the motion to compel, in part, concerning request for production of documents number 39.

### G. Request for Production of Documents No. 40

This request seeks the production of all documents showing any kind of disciplinary action to center managers since January 1, 2016. (ECF No. 39 at 13). Defendant objected to this request, but it identified that no center managers were fired in West Virginia during Plaintiff's employment for reporting compliance issues. (*Id.* at 13-14). The Court finds that this discovery request seeks discoverable information, but it is likewise overly broad in scope. As stated by Defendant's counsel during the hearing, Defendant has approximately one thousand centers all operated by center managers who may have been disciplined for a variety of reasons. Given Defendant's contention during the hearing that Plaintiff was fired for changing the settings on a CPAP machine in contravention of West Virginia regulatory law, the Court finds it reasonable to limit the geographical and subject matter of the request. The Court **GRANTS** the motion to compel, in part, and orders Defendant to supplement its response to request for production of documents number 40 **within fourteen (14) days** regarding center managers in West Virginia that were accused of or disciplined for changing the settings on CPAP machines since January 1, 2016.

### H. Request for Production of Documents No. 41

This request seeks the production of all correspondence between Plaintiff and Moreau. Plaintiff's counsel advised during the hearing that the dispute concerning this discovery request is resolved. Therefore, the Court **DENIES** the motion to compel, in part, as moot concerning request for production of documents number 41.

### I. Privilege Log

Plaintiff identified in her motion certain alleged deficiencies in Defendant's

9

privilege log. Plaintiff's counsel advised the Court during the hearing that this issue is resolved. Therefore, the Court **DENIES** the motion to compel, in part, as moot concerning the privilege log.

The Clerk is instructed to provide a copy of this Order to counsel of record.

**ENTERED**: February 27, 2023

Cheryl A. Eifert
United States Magistrate Judge