IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JILLIAN WATKINS,

       **Plaintiff,**

v.                                                                          Case No.:  3:22-cv-00109

LINCARE, INC.,

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion to Compel Discovery Responses from Defendant Lincare, Inc. (ECF No. 141). For the reasons that follow, the Court **GRANTS, in part,** and **DENIES, in part,** the motion. The parties shall bear their own costs associated with this discovery dispute.

**I.      Relevant Facts**

*A.   Amended Complaint*

Plaintiff worked for All Med, a "home care, delivery medical facility," beginning in 2006. (ECF No. 116 at 2). In 2017, Defendant purchased All Med, and Plaintiff's employment continued with Defendant as the Center Manager of the Huntington, West Virginia location. (*Id.*). Defendant provides in-home respiratory therapy products and services, which are in some cases billed to government insurance programs such as Medicare, Medicare Advantage, and Medicaid. (*Id.*). In March 2020, Plaintiff noticed while auditing patients' files that respiratory therapist, Andrea McClung, documented ventilator checks that she did not perform and some devices in patient's homes were not

1

used for several months. (*Id.* at 6). Plaintiff reported the problems to Regional Manager, Sherry Robinson, because she was concerned about patient safety and fraudulent billing. (*Id.* at 7). Plaintiff identified similar issues during audits in the summer and October of 2020, and she again informed Ms. Robinson of her concerns. (*Id.* at 7-10).

Defendant began investigating Plaintiff's reports in November 2020, and learned in early December 2020, that the West Virginia Board of Respiratory Care was conducting its own investigation of Defendant's practices due to complaints received. (*Id.* at 11). Defendant terminated Plaintiff on January 8, 2021.[1] (*Id.* at 12). In June 2021, Defendant admitted to the Inspector General of the United States Department of Health and Human Services ("OIG") that it inappropriately documented patient compliance with prescribed ventilator therapy and failed to follow up with patients and their providers regarding that issue. (*Id.*). As a result, Defendant reimbursed the federal government $485,901.70 and adjusted $53,577.62 in patients' accounts. (*Id.*).

Plaintiff asserts that Defendant terminated her employment in retaliation for her reporting the fraudulent billing, which Defendant subsequently had to repay. Plaintiff asserts three claims:

1. Retaliatory discharge because of good faith reports of wrongdoing under the West Virginia Patient Safety Act, W. Va. Code § 16-39-3(4);

2. Retaliatory discharge in violation of public policy under *Harless v. First National Bank*, 162 W. Va. 116 (W. Va. 1978), to wit: the public policy set forth in the Federal False Claims Act, 31 U.S.C. §§ 3729-33;

3. Common law tortious and outrageous conduct toward Plaintiff.

(ECF No. 116 at 1-2, 13-17).

---

[1] According to Defendant's citation to Plaintiff's termination memorandum, Plaintiff was fired for providing inadequate direction and leadership to her staff, which led to numerous and serious violations of Defendant's policies and procedures, and Plaintiff performed functions outside of the scope of her position as Center Manager, such as changing pressure settings on a CPAP machine. (ECF No. 154 at 3-4, 4 n.1).

### B. *Motion to Compel*

Plaintiff seeks a court order compelling Defendant to produce documents in response to the following two discovery requests:

**Request for Production No. 1**

Produce any and all pleadings filed against Lincare relating to Qui Tam and/or False Claims Act[2] actions brought against it by any person, relator, and/or U.S. government agency within five years of the filing of the Complaint in this matter to the present.

> **Response:** Lincare objects to this Request by adopting and incorporating by reference its Preliminary Statement and General Objections ¶¶ 1-9. Lincare objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the work product doctrine, and/or any other privilege from disclosure. Lincare further objects to this Request on the grounds that it seeks information that is not relevant to any claim or defense in this matter, including, without limitation, insofar as it seeks information about any allegations against Lincare other than those alleged by Plaintiff in this action. Objecting further, Lincare states that whether or not a large national company with thousands of employees and thousands of patients in a heavily regulated industry has had False Claims Act actions brought against it does not make any fact in this action more or less likely to have occurred. Lincare also objects on the grounds that the Request is overly broad and unduly burdensome, as it seeks information regarding collateral issues that will require discovery not proportional to the needs of the case. Based on the foregoing objections, Lincare will not produce documents in response to this Request.

**Request for Production No. 11**

Produce any documents that contain or purport to contain documentation of allegations of fraudulent billing practices at Lincare following Ms. Watkins's termination.

> **Response:** Lincare objects to this Request by adopting and incorporating by reference its Preliminary Statement and General Objections ¶¶ 1-9. Lincare objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the work product doctrine, and/or any other privilege from disclosure. Lincare

---

[2] "*Qui tam*" actions permit private individuals termed "relators" to sue on behalf of the United States to recover money that was fraudulently obtained by a person or corporation. As indicated by Plaintiff, individuals can file *qui tam* complaints based on violations of the False Claims Act. (ECF No. 142 at 8).

3

> also objects to this Request on the grounds that it is overly broad and not reasonably limited in scope of subject or time period. Lincare objects to this Request on the grounds that it is not relevant to any claim or defense in this action, including, without limitation, insofar as it seeks information about any allegations against Lincare other than those alleged by Plaintiff in this action, and because the information sought does not have any tendency to make a material fact more or less probable than it would be without the information. Objecting further, the Request seeks information regarding collateral issues that will require discovery not proportional to the needs of the case. Lincare also objects to this Request on the grounds that it is interposed to harass and to needlessly increase the cost of litigation. Based on the foregoing objections, Lincare will not produce documents in response to this Request.

(ECF No. 142 at 6, 11).

Regarding Request No. 1, Plaintiff asserts that *qui tam* and False Claims Act complaints filed against Defendant are relevant to show that Defendant has a pattern of defrauding the federal government, covering it up, and retaliating against employees who report it. (ECF No. 142 at 8). Plaintiff anticipates that the documents may help her prove that Defendant's stated reason for firing her was pretextual, and she was actually fired because she reported Defendant's wrongdoing. (*Id.*). Also, Plaintiff seeks to determine whether the primary fact witnesses in this matter, such as Defendant's Chief Compliance Officer, played any role in the *qui tam* and/or False Claims Act actions. (*Id.* at 9). Plaintiff intends to use the complaints as a starting point to conduct her own investigation of the actions to determine if similar allegations were made and the same witnesses were involved. (ECF No. 157 at 10). Plaintiff argues that the complaints might assist her in showing that Defendant knowingly overbilled the government and used employees as its scapegoats for the wrongful conduct. (*Id.*).

As to Request No. 11, Plaintiff expresses the same reasoning that she hopes to discover fact witnesses who were likewise disciplined or terminated for interfering with

Defendant's fraudulent billing activity. (ECF No. 142 at 12). Plaintiff explains that the documents could be probative of whether Defendant attempted to remedy the billing errors, which could be relevant to whether punitive damages should be imposed against Defendant under Plaintiff's *Harless* and tort of outrage claims. (*Id.* at 13). Finally, Plaintiff notes that documents pertaining to Defendant's alleged fraudulent billing practices are relevant to show pretext because they would tend to show that Plaintiff was not responsible for the overbilling if the errors persisted after she was fired as supervisor. (*Id.*).

In response to Plaintiff's motion to compel, Defendant asserts that Plaintiff mischaracterizes the issues in this case. (ECF No. 154 at 1). Specifically, Defendant emphasizes that the central inquiry is whether Plaintiff was fired because she reported suspected wrongdoing, not whether the wrongdoing occurred. (*Id.*). Defendant notes that this is an employment law, not a *qui tam* or False Claims Act, case. (*Id.* at 6, 8). Rather, Defendant investigated the issues that were raised and repaid the wrongfully billed amounts without government intervention. (*Id.* at 8). According to Defendant, the information that Plaintiff seeks does not make any fact or issue in this case more or less likely and is not relevant. (*Id.*). As to burdensomeness, Defendant insists that identifying every *qui tam* or False Claims Act action in which it has been involved in the past five years would force it to defend the allegations in those collateral matters, and Plaintiff would try to substantiate them, creating minitrials on irrelevant information. (*Id.* at 9). Also, Defendant argues that it cannot provide complaints filed under seal.[3] (*Id.* at 17 n.6).

---

[3] *Qui tam* complaints under the False Claims Act are filed under seal. Defendants typically learn about the *qui tam* suit during the course of the government's investigation while the case is still under seal. The government discloses the *qui tam* complaint to solicit a response to the allegations from the defendant and sometimes as part of settlement discussions. *See* https://buckleyfirm.com/sites/default/files/Buckley-Sandler-Article-The-False-Claims-Act-Seal-Does-It-Bind-and-Gag-the-Defendant.pdf.

5

Defendant further states in a footnote that, although it was not its principal purpose in objecting based on burdensomeness, the request is not geographically limited, although Defendant is a large company with thousands of employees and hundreds of centers. (*Id.*). In addition, Defendant contends that the investigations into the alleged false billing may be privileged. (*Id.* at 9 n.4). As to discovery of whether certain employees were involved in other False Claims Act investigations, Defendant asserts that there is no connection between those unrelated allegations and Plaintiff's termination. (*Id.* at 15). Defendant maintains that Plaintiff's attempt to uncover other people who were unlawfully disciplined or fired for interfering with Defendant's fraudulent billing is nothing more than a fishing expedition. (*Id.* at 16). Defendant clarifies that, despite its privilege objections, it is not objecting to producing this information based on privilege. Rather, Defendants opposes the requests because the information sought is not relevant, has no probative value, and would require Defendant to engage in an unduly burdensome defense of collateral issues. (*Id.* at 17).

In reply, Plaintiff reiterates that Defendant advised the OIG that it prevented the overbilling from recurring by, among other things, terminating Plaintiff as Center Manager. (ECF No. 157 at 3). She contends that the information sought is relevant to show that she had a good faith belief that Defendant knowingly made a false or fraudulent claim against the federal government because it made the same errors in the past. (*Id.* at 6). Concerning burdensomeness, Plaintiff notes that Defendant has a robust compliance department that presumably tracks these complaints. (*Id.* at 8). She aims to show that Defendant blamed other whistleblowers like it did her. (*Id.* at 9). Plaintiff notes that she independently discovered one instance of Defendant's past overbilling of Medicare, but she needs information from Defendant regarding other instances. (*Id.* at 10 n.8).

6

II. **Relevant Law**

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of discovery in this action. It states, in relevant part:

> [U]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Becton, Dickinson & Co. v. BioMedomics, Inc.*, No. 5:20-CV-536-FL, 2021 WL 3864476, at *3 (E.D.N.C. Aug. 30, 2021) (citations omitted). "Relevance is not, on its own, a high bar." *Ceresini v. Gonzales*, No. 3:21-CV-40 (GROH), 2022 WL 628520, at *3 (N.D.W. Va. Mar. 3, 2022) (citation omitted). As stated in the rule, information "need not be admissible in evidence to be discoverable." *Id.* (quoting Fed. R. Civ. P. 26(b)(1)). "Federal courts have long understood that relevancy for discovery purposes is defined more broadly than relevancy for evidentiary purposes." *Id.*

Even if seeking relevant information, the discovery request must be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "Although Rule 26(b)(1)'s relevance inquiry does not, itself, pose a 'high bar,' its proportionality requirement mandates consideration of multiple factors in determining whether to allow discovery of even relevant information." *Ceresini*, 2022 WL 628520, at *3. The factors include: "the importance of the issues at stake in the action, the amount in controversy, the parties'

7

Case 3:22-cv-00109 Document 167 Filed 09/19/23 Page 8 of 13 PageID #: 1403

relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* (quoting Fed. R. Civ. P. 26(b)(1)).

A party dissatisfied with a discovery response or lack of response can move for an order compelling disclosure or discovery after attempting to confer with the party that submitted the response or failed to respond. Fed. R. Civ. P. 37(a). The party resisting discovery, not the party seeking discovery, bears the burden of persuasion. *Tinsley v. OneWest Bank, FSB*, No. 3:13-CV-23241, 2014 WL 7005852, at *2 (S.D.W. Va. Dec. 10, 2014) (citations omitted). As such, conclusory and unsubstantiated allegations are simply insufficient to support discovery objections based on the grounds of annoyance, burdensomeness, oppression, or expense. *Id.*

### III. Discussion

#### A. Request for Production No. 1

Plaintiff seeks copies of *qui tam* and False Claims Act complaints that were filed against Defendant from March 2, 2017 (five years prior to Plaintiff filing this action) to the present. Plaintiff alleges that she must prove in her *Harless* claim that she had a good faith belief that Defendant knowingly made a false or fraudulent claim against the federal government.[4] (ECF No. 157 at 6). She asserts that her request seeks evidence of similar bad acts to show that Defendant "knowingly" violated the False Claims Act. (*Id.*).

In *Harless v. First Nat'l Bank in Fairmont*, 246 S.E.2d 270 (W. Va. 1978), the Supreme Court of Appeals of West Virginia ("SCAWV") established an exception to the state's employment at-will doctrine. *Watkins v. Lincare Inc.,* No. CV 3:22-0109, 2023 WL

---

[4] The False Claims Act instructs that any person who knowingly submits, or causes to submit, false claims to the government is liable for three times the government's damages plus a penalty that is linked to inflation." https://www.justice.gov/civil/false-claims-act.

8

4161202, at *2 (S.D.W. Va. June 23, 2023). Specifically, the SCAWV held that "employers may not discharge employees to contravene a substantial public policy of the state." *Id*. To state a plausible *Harless* claim for retaliatory discharge, a plaintiff must show the following:

(1) That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element);

(2) That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element);

(3) That plaintiff's dismissal was motivated by conduct related to the public policy (the causation elements);

(4) The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

*Id.*

The SCAWV explained that, in order to establish the second *Harless* element, the plaintiff must show evidence that the employer actually violated public policy. *Herbert J. Thomas Mem'l Hosp. Ass'n v. Nutter*, 238 W. Va. 375, 387-89 (2016) (stating, "[i]t is axiomatic that Medicare fraud is a violation of public policy; the problem is that the plaintiff did not introduce any evidence showing Medicare fraud occurred," reversing circuit court's denial of judgment as a matter of law on *Harless* wrongful discharge claim because there was no evidentiary basis offered that the employer actually violated public policy).

Therefore, to establish her *Harless* claim, Plaintiff is entitled to discovery on whether the conduct that she reported actually violated the False Claims Act. Given the fact that the False Claims Act contains a scienter element that Defendant knowingly submitted or caused to submit a false claim, other instances that Defendant was charged

9

with submitting the same false claims could be relevant to show that Defendant knew that the claims it submitted or caused to be submitted in Plaintiff's case were unlawful. For instance, Plaintiff suggests that the complaints might assist her in determining whether the primary fact witnesses in this case were involved in False Claims Act cases, which presumably could show Defendant's imputed knowledge that the billing practices and conduct that Plaintiff reported was illegal.

In addition, as Plaintiff argues, the complaints could help her identify other whistleblowers who were fired for reporting Defendant's false claims to demonstrate that Defendant's stated reason for firing her was pretextual. Once a "plaintiff in an action for wrongful discharge based upon the contravention of a substantial public policy has established the existence of such policy and established by a preponderance of the evidence that an employment discharge was motivated by an unlawful factor contravening that policy, liability will then be imposed on a defendant unless the defendant proves by a preponderance of the evidence that the same result would have occurred even in the absence of the unlawful motive." *Page v. Columbia Nat. Res., Inc.*, 198 W. Va. 378, 390 (1996). If the employer can show a "legitimate, nondiscriminatory reason for its actions, the plaintiff can then attempt to "prove that the proffered legitimate reason is a mere pretext rather than the true reason for the challenged employment action." *Id.* at 392 n.14. Plaintiff argues that the *qui tam* and False Claims Act complaints would give her the necessary information to investigate those cases and determine whether the same witnesses were involved.

For the above reasons, Plaintiff's request meets the broad test for relevancy. However, from a proportionality standpoint, the request is overly broad. It is unclear how actions that occurred after the alleged fraud that Plaintiff reported could show that

Defendant knew that it was violating the False Claims Act when Plaintiff made the reports. Furthermore, the Court does not appreciate the need to broaden this request beyond the False Claims Act. Plaintiff asserts that "[b]ecause the False Claims Act is a qui tam statute, [she] expanded the request to other similar state statutes." (ECF No. 142 at 7-8). The Court is not persuaded by this argument. Plaintiff does not identify any other sources of public policy that form the basis of her *Harless* claim. Therefore, discovery is more appropriately limited to False Claims Act actions.

The Court notes Defendant's dispute that production of these complaints will force it to defend the matters alleged in those cases. However, the argument is unavailing. Parties typically request in discovery information concerning past lawsuits, complaints, and allegations relating to the same subject matter alleged in the complaint. Whether the information is ultimately admissible does not guide whether the information is discoverable. Defendant will be under no greater obligation as any party defending that other lawsuits and allegations of wrongdoing are not applicable to the present case.

For those reasons, the Court **ORDERS** Defendant to produce within **fourteen (14) days** of this Order the complaints filed in federal or state court from March 2, 2017 (five years prior to this action) to January 8, 2021 (the date of Plaintiff's termination) which allege that Defendant violated the False Claims Act. Defendant is not required to identify or produce any sealed complaints. If responsive complaints are unsealed during the pendency of this case, Defendant shall produce them by supplemental response.

### B. *Request for Production No. 11*

Plaintiff similarly seeks documents that "contain or purport to contain" documentation of allegations of Defendant's fraudulent billing practices after Plaintiff was fired on January 8, 2021. Plaintiff hopes this information will assist her in discovering

other employees who were disciplined or fired for interfering with Defendant's fraudulent billing activity, in showing whether Defendant attempted to remedy the billing errors, and in demonstrating that she was not responsible for the overbilling. The Court agrees that the information sought could be relevant to issues such as pretext and punitive damages for those reasons. However, the request is again far too broadly worded in proportion to the needs of the case. The request is not limited to certain types of documents or fraudulent billing practices, nor is it geographically limited, although Defendant has hundreds of offices. Consequently, the request casts a very wide net of potentially irrelevant information.

The request is more appropriately limited to the type of fraudulent billing that Plaintiff reported and which she asserts caused her termination and the geographic region in which she worked. Allegations outside of that scope have little potential relevance to the issues in this case. Per the amended complaint, Plaintiff was fired after reporting that status updates/checks on CPAP/ventilators were documented that were not performed; devices were left in patients' home and billed to insurance that were not being used for extended periods of time; settings were changed on CPAP/ventilators without being ordered by a physician; services, including a home visit, were fraudulently documented; and a AffloVest was not properly fitted. (ECF No. 116 at 6-11). Some of the allegations concerning the CPAP/ventilator settings and AffloVest appear to pertain primarily to patient safety as opposed to fraudulent billing. However, for the sake of encompassing the realm of relevant information, the Court will limit the request to all of the conduct that Plaintiff reported. Defendant shall produce within **fourteen (14) days** of this Order documents that reference or include allegations of fraudulent billing regarding (1) status updates/checks on CPAP/ventilators that were not performed, (2) in-home devices that

were not being used, (3) unauthorized changes to CPAP/ventilator settings, (4) in-home visits or other services not performed, or (5) an AffloVest that was not properly fitted. The request is limited to documents dated on or after January 8, 2021 concerning the geographic territory of Plaintiff's regional manager. As with any discovery request, Defendant may assert valid claims of attorney-client privilege and/or work product and produce a proper privilege log identifying the documents redacted or withheld.

    The Clerk is instructed to provide a copy of this Order to counsel of record and any unrepresented party.

**ENTERED:** September 19, 2023

_____
Cheryl A. Eifert
United States Magistrate Judge