UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| JILLIAN WATKINS,<br><br>     Plaintiff,<br><br>  v.<br><br>LINCARE INC.,<br><br>     Defendant. | C.A. No. 3:22-cv-00109 |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S SUR-REPLY IN
OPPOSITION TO LINCARE INC.'S MOTION FOR SUMMARY JUDGMENT**

  In accordance with the Court's February 29, 2024 Order (ECF No. 218, the "Order"), Defendant Lincare Inc. ("Lincare") submits this Response to Plaintiff's Sur-Reply in Opposition to Lincare's Motion for Summary Judgment (ECF No. 220, the "Sur-Reply"). In the Order, the Court noted that "Plaintiff deserves the opportunity to explain how" evidence of a settlement between Lincare and the United States Department of Justice following an investigation by the United States Attorney's Office for the Southern District of New York ("SDNY") in an unrelated case "supports her case." Order at 1.[1]

  Plaintiff has failed to make such a showing. As Lincare stated in its Opposition to Plaintiff's Motion to File Sur-Reply in Opposition to Defendant's Motion for Summary Judgment (ECF No. 215, the "Sur-Reply Opposition" or "Sur-Reply Opp."), the SDNY Settlement is irrelevant to the pending Summary Judgment Motion because Lincare assumed for the purposes of the Motion that Plaintiff made good-faith reports of overbilling of ventilators, the very conduct she now claims is a revelation. *See* Sur-Reply Opp. at 1. Despite being given

---

[1] As used herein, "SDNY" refers to the U.S. Attorney's Office for that District, and not to the District Court itself. The underlying investigation and referenced settlement are referred to respectively as the "SDNY Investigation" and the "SDNY Settlement."

1

numerous opportunities to do so, Plaintiff still fails to address the summary judgment standard she is faced with. She fails to establish any genuine dispute of any material fact, including regarding the reason for her termination. Plaintiff also fails to counter that Lincare is entitled to judgment as a matter of law on Plaintiff's claims, including that her *Harless* claim is preempted and her outrage claim fails on the law on the undisputed facts.

For these reasons, as well as the reasons set forth in the Memorandum of Law in Support of Lincare Inc.'s Motion for Summary Judgment (ECF No. 180, the "SJ Memorandum" or "SJ Memo") and the Reply Memorandum in Further Support of Lincare Inc.'s Motion for Summary Judgment (ECF No. 196, the "SJ Reply"), the Court should grant the Summary Judgment Motion and enter judgment on behalf of Lincare on all claims.

    1.    <u>Lincare was aware of the investigation by SDNY beginning in September 2018 but did not know the dates of the "Covered Period" until November 2022 (22 months after Plaintiff's termination).</u> Plaintiff's Sur-Reply puts forth two different theories regarding the SDNY Investigation, both of which she argues support that her termination was pretextual— either Lincare knew it was being investigated at the time of Plaintiff's termination, or it did not. Neither of those theories establish that the SDNY Settlement is material to the pending Summary Judgment Motion.

In order to provide the Court with additional context, Lincare offers the following facts regarding the SDNY Investigation.[2] Lincare first learned of the nationwide Investigation when it was served with a Civil Investigative Demand ("CID") in September 2018, two and a half years prior to Plaintiff's termination. Discovery in the Investigation was extensive. In December

---

[2] These facts are presented as the representations of lead counsel from Foley & Lardner, who represented Lincare in the SDNY Investigation since the service of the CID. They can be put forward as an affidavit should the Court prefer.

2

2019, Lincare produced nationwide non-invasive ventilator patient billing information in response to SDNY's request. In response to a further SDNY request, Lincare supplemented this production in October 2022. Lincare was first informed by SDNY on November 9, 2022— years after Plaintiff's termination—that the "Covered Period" (as subsequently defined in the Settlement Stipulation) would run through February 29, 2020. SDNY indicated it chose that date because it was just before the beginning of the COVID-19 Public Health Emergency ("PHE"), and therefore avoided issues concerning ventilator coverage waivers that were implemented in connection with the PHE. Materials concerning the *qui tam* Complaint and the Investigation initiated in response thereto were sealed from 2018 through February 14, 2024, and Lincare promptly disclosed to the Court and to Plaintiff on the morning of February 15, 2024.[3]

Plaintiff latches on to the end date on the Covered Period as the lynchpin of her argument that Lincare allegedly terminated her not because of the improper conduct with patients that Plaintiff admitted to two days before her termination, but because Lincare was somehow trying to fool the Department of Justice into not extending the Covered Period. This is not only wholly speculative; it is completely counterfactual. Lincare knew that it was under investigation by SDNY for more than two years at the time of Plaintiff's termination. Her termination was ten months after Plaintiff made her first complaint regarding Ms. McClung's allegedly improper practices with ventilators. As indicated above, contrary to Plaintiff's speculation, Lincare was not aware at the time of Plaintiff's termination what the end date of the SDNY Investigation's

---

[3] Plaintiff has evidently abandoned her factually inaccurate argument and baseless insinuations that the SDNY Settlement was publicly disclosed on February 5, 2024, the day before the Court's hearing on Lincare's Summary Judgment Motion. *See* Plaintiff's Notice of Additional Authority and Motion to File Sur-Reply in Opposition to Defendant's Motion for Summary Judgment (ECF No. 211, the "Sur-Reply Motion"). As Lincare noted, the explicit date on Unsealing Order, *inter alia*, establishes that the SDNY Settlement was not unsealed until February 14, 2024. *See* Sur-Reply Opp. at 2-3. Plaintiff does not pursue this argument, and thus concedes the obvious in her Sur-Reply. *See generally* Sur-Reply.

3

Covered Period would be (or even that there would be a PHE). Any inference that Plaintiff was terminated in order to prevent SDNY from extending the Covered Period is unsupported by the undisputable facts and is simply speculation, impermissible on Summary Judgment.[4]

2. **The SDNY Settlement does not save Plaintiff's preempted *Harless* claim, which fails as a matter of law.** Plaintiff loses track of her own claim in arguing that the SDNY Settlement is somehow material to her *Harless* claim in Count II. Plaintiff claim is for retaliation, and not for a violation of the Federal False Claims Act.[5] Plaintiff's *Harless* claim is intended to provide an exception to West Virginia's at-will employment regime, but only where there is no other remedy for alleged retaliation. It is therefore irrelevant to Plaintiff's retaliation claim that the "Admitted Conduct," as defined in the SDNY Settlement, included statements regarding overbilling, or how long that conduct had been going on.

The SDNY Settlement does not impact Lincare's principal argument that it is entitled to judgment as a matter of law on the *Harless* claim. Plaintiff does not argue there is any material dispute of fact regarding Lincare's argument that her *Harless* claim is duplicative to her claim under the West Virginia Patient Safety Act ("WVPSA"). Instead she seeks to supplement her prior briefing and arguments at the February 6th hearing by arguing that the WVPSA *used to*

---

[4] Plaintiff halfheartedly notes in a footnote that she has "not yet had an opportunity to engage in discovery" on issues regarding the SDNY Settlement. *See* Sur-Reply at 9-10 n.2. But Plaintiff's Sur-Reply is the second lengthy brief she has filed since the disclosure of the Settlement, and she has still failed to seek any discovery. More to the point, she has repeatedly failed to comply with Fed. R. Civ. P. 56(d), which provides the mechanism to seek additional discovery in the context of a pending summary judgment motion. That Rule requires the nonmovant to "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." *Id*. Because Plaintiff has failed to do so either in the Sur-Reply Motion or in the Sur-Reply, there is no proper request for discovery (although Lincare reserves its right to oppose any such request). Plaintiff's footnote musings should be disregarded for that reason alone, and the Summary Judgment Motion should be decided based on the supported facts in the record, not mere speculation. *See* Fed. R. Civ. P. 56.

[5] If fact, had Plaintiff attempted to assert such a claim, it would have been barred. The United States had already been on notice since 2018 regarding overbilling allegations due to the now unsealed *qui tam* action filed in New York. *See* Sur-Reply, Ex. A. Plaintiff would therefore not have been the "first to file," and would not have been able to proceed. *See* 31 USC § 3720(b)(5) ("When a person brings an action under this subsection, *no person other than the Government may intervene or bring a related action based on the facts underlying the pending action*.") (emphasis added).

contain a statement that the West Virginia Legislature's intent was to "protect patients by providing protections for those health care workers with whom the patient has the most direct contact." *See* Sur-Reply at 16 n.4.

Plaintiff still does address that the plain and explicit language of the WVPSA prohibits retaliation against healthcare workers complaining of "waste," defined as "the conduct, act, or omission by a health care entity that results in the substantial *abuse, misuse, destruction, or loss of funds*, resources, or property belonging to a patient, a health care entity, or *any federal or state program*." W. Va. Code § 16-39-3 (emphasis added); *see also* Sur-Reply Opp. at 7-8. Plaintiff's argument that the Court should look to some stated public policy and ignore the plain language of the WVPSA in determining whether a *Harless* claim is superseded is unsupportable as a matter of statutory interpretation. "When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (internal citations omitted). Plaintiff also ignores this Court's applicable precedent, which looks past a statement of public policy to the text of the statute itself to determine whether a *Harless* claim is preempted. *See, e.g.*, *Hawley v. Hospice of Huntington, Inc.*, Civ. Ac. No. 3:19-0759, 2021 WL 517049, at *3 (S.D.W. Va. Feb. 11, 2021) (Chambers, J.) (elucidating the public policy embodied by the WVPSA as prohibiting retaliation for making "good faith reports of instances of wrongdoing *and/or waste*," and holding that the *Harless* claim was preempted by the WVPSA); *see also Adkins v. Cellco P'ship, Inc.*, Civ. Ac. No. 3:17-2772, 2017 WL 2961377, at *2 (S.D.W. Va. July 11, 2017) (Chambers, J.) (analyzing the section of the West Virginia Human Rights Act laying out "unlawful discriminatory practices" to determine the public policy of the statute, and holding that the *Harless* claim was preempted).

The legislative intent language cited by Plaintiff, which has since been repealed, cannot override the plain language of the WVPSA.  Plaintiff alleges that in making reports, she was acting to avoid overbilling to the Federal government.  As noted in the Sur-Reply Opposition, and as this Court has previously recognized, "[t]hat is the exact same conduct that is proscribed by the WVPSA, which prohibits retaliation for good faith reports of 'waste.'" *See* Sur-Reply Opp. at 7-8; *see also* W. Va. Code § 16-39-3; *Hawley*, 2021 WL 517049 at *3.  The SDNY Settlement is immaterial to the legal bases for the Summary Judgment Motion on Count II, and Lincare is entitled to judgment as a matter of law.

3. <u>Plaintiff does not even attempt to argue that the SDNY Settlement impacts her outrage claim, which fails both as a matter of law and on the undisputed facts.</u>  Nothing about the fact of the SDNY Settlement or any of the Admitted Conduct creates a dispute of material fact or changes that Plaintiff's outrage claim cannot survive as a matter of the law.  Plaintiff appears to concede this, as she fails to address the outrage claim at all in both the Sur-Reply Motion and the Sur-Reply.  *See generally* Sur-Reply Motion; Sur-Reply.

West Virginia law is clear that it must be the "improper conduct on the part of the employer in effecting the discharge" that is outrageous, not merely the fact of the termination itself.  *See Dzinglski v. Weirton Steel Corp.*, 191 W. Va. 278, 285-86 (1994) (emphasis added).  As discussed at length in the Sur-Reply Opposition, the existence of the SDNY Settlement has no effect on the undisputed facts regarding Lincare's conduct in effecting Plaintiff's termination.  It therefore cannot have any effect on the conclusion that it was not outrageous.  *See* Sur-Reply Opp. at 8; *see also* SJ Memo at 23-25; SJ Reply at 18-19.  Lincare is entitled to judgment as a matter of law on the outrage claim.

4. <u>The SDNY Settlement fails to create a genuine dispute of material fact regarding Plaintiff's WVPSA retaliation claim.</u>  As explained in the Sur-Reply Opposition, the SDNY Settlement and the Admitted Conduct also have no impact on the bases for Lincare's Summary Judgment Motion on Count I, because the Admitted Conduct is materially similar to Plaintiff's allegations regarding Ms. McClung's conduct.  As previously noted, Lincare accepted the validity of those reports for the purposes of the Summary Judgment Motion.  Lincare is entitled to judgment as a matter of law because of the undisputed facts including:

- Plaintiff's complaints regarding Ms. McClung;
- That McClung was consistently disciplined;
- That Plaintiff was not disciplined until ten months later after her first report regarding Ms. McClung; and
- That Plaintiff was disciplined only after she unambiguously admitted engaging in conduct that Lincare believed violated West Virginia law and its own policies, and that put patient safety at risk.  *See* Sur-Reply Opp. at 4-5 (including record cites).

Nothing about the SDNY Settlement impacts these factual bases at all, and Lincare is entitled to judgment as a matter of law on Count I.

Plaintiff attempts to make hay in her Sur-Reply regarding the allegations in the Relators' *qui tam* Complaint and the Government's Complaint in Intervention in the SDNY Investigation. Plaintiff devotes two full pages to quotes from those Complaints, despite the fact that they are mere allegations.  *See* Sur-Reply at 2-3.  Plaintiff then spends several more pages citing to portions of the Admitted Conduct from the Settlement Stipulation.  As Lincare has previously noted, these are admissions of factual conduct only, and not legal admissions.  *See* Sur-Reply

Opp. at 3. Lincare did not admit that it violated the False Claims Act or any other Federal or State statute. *See id.*

Plaintiff continues to fail to identify any genuine dispute of material fact regarding her termination. Throughout the briefing on the Summary Judgment Motion, Plaintiff has offered only speculation regarding potential pretextual reasons that she may have been terminated. The Sur-Reply offers more of the same, suggesting that the SDNY Investigation gave Lincare a motive to terminate Plaintiff in order to cover up from the federal government that it was continuing to improperly bill for certain equipment. Plaintiff again fails to explain why, if Lincare had that motivation and acted on it in January 2021 after Plaintiff's third report regarding Ms. McClung, it would not have acted on the same motivation and nipped the issue in the bud upon Plaintiff's first report regarding Ms. McClung ten months earlier in March 2020.

Plaintiff's new arguments hold no water. Nothing in the SDNY Settlement or in the Sur-Reply creates a genuine dispute of fact regarding the material facts. Plaintiff made complaints about Andrea McClung three times, and each time Ms. McClung was disciplined and Plaintiff was not.[6] Nearly two months after Plaintiff's final complaint regarding Ms. McClung, Lincare learned through a patient complaint (undisputedly unrelated to anything having to do with the West Virginia Board of Respiratory Care) that Plaintiff changed at least one patient's CPAP settings, even though she is not a licensed respiratory therapist. Lincare initiated an internal

---

[6] Plaintiff erroneously states that Lincare "failed to take action to remedy the problem with Ms. McClung." This is contrary to the undisputed admissible record evidence, which establishes that Lincare disciplined Ms. McClung after every report made by Plaintiff, that Plaintiff understood and accepted Lincare's progressive disciplinary approach (where there was no imminent risk to patient safety), and that Lincare was prepared to terminate Ms. McClung at the time she voluntarily resigned in November 2020. *See* SJ Memo at 3 (including record citations).

investigation, during which Plaintiff admitted in her interview with Sandra Moreau and again in her own written email improper conduct including:

- Changing CPAP pressures at least once, despite not being a licensed Respiratory Therapist;

- Being aware that her non-licensed subordinate, Jenny Elliott, routinely changed CPAP pressures, despite not being a licensed Respiratory Therapist; and

- Permitting her non-licensed subordinate, Danielle Davis, to set up an INR device.

*See* Sur-Reply Opp. at 5 (including record cites).

Ms. Moreau recommended Plaintiff's termination solely on the basis of these actions, as reflected in her contemporaneous written notes.[7] Plaintiff and Ms. Elliot were terminated on the same day, over ten months after her first report, and more than three months before Lincare quantified any amount to be repaid to the government due to overbillings.[8] *See id.* at 4-6. None of these facts is changed by the SDNY Settlement.

These facts are supported by evidence, and not speculation. Ms. Moreau testified under oath that she made the recommendation to terminate Plaintiff on the basis that Plaintiff operated outside the scope of her licensure, and allowed her subordinates to do the same. *See* SJ Motion at 5-6 (including record cites). Ms. Moreau's contemporaneous notes confirm the motivation for

---

[7] Plaintiff makes another inaccurate statement when she says that Lincare "terminated Ms. Watkins supposedly for conduct that was not improper." *See* Sur-Reply at 12. Not only does Plaintiff admit that she could not change CPAP settings by physically touching a patient's machine, but the law is also clear that a license is required to change CPAP pressures, which Plaintiff has not disputed. *See* SJ Memo at 10-11.

[8] The Sur-Reply once again argues that Sherry Robinson should considered a comparator. *See* Sur-Reply at 14. This supplemental argument has nothing to do with the SDNY Settlement and should be disregarded. In addition, as previously argued, a valid comparator is someone who engaged in the same conduct that formed the basis for a plaintiff's termination. *See, e.g.*, *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 720 (4th Cir. 2013). Even accepting, *arguendo*, Plaintiff's theory that she was terminated for making reports, Ms. Robinson is not a proper comparator because she did not make any reports of false billing or lack of documentation, and therefore did not engage in the same conduct that allegedly formed the basis for Plaintiff's termination.

9

terminating Plaintiff included "[l]eadership lack of – inadeq.," "practicing beyond scope," and "setting PAP pressures." *See* SJ Ex. P. Plaintiff has not disputed the veracity of these notes dated the day before her termination. Speculation regarding a potential motive cannot override the undisputed facts establishing that Plaintiff was terminated because she illegally changed CPAP pressures, and poorly supervised her staff.

Instead of addressing *any* of these undisputed material facts, Plaintiff relies on mere speculation to suggest that Lincare terminated Plaintiff to prevent the government from extending the covered period of its investigation past February 2020. On the facts in the record, this makes no sense, as Lincare itself reported the overpayment to the federal government in July 2021.[9] It is incongruous to suggest that Lincare was attempting to cover up something it voluntarily disclosed to the OIG only months later. Further, as explained above, Lincare was unaware of the end date for the Covered Period unilaterally set by SDNY in the SDNY Settlement until November 2022, almost two years after Plaintiff was terminated. There was therefore no way that any desire to limit the Covered Period could have provided a motive to terminate Plaintiff, and it does not support a claim of pretext.

The SDNY Settlement provides no further support to Plaintiff's cries of pretext in the face of the undisputed factual record, and Lincare is entitled to judgment as a matter of law on Count I.

---

[9] Plaintiff argues that by allegedly "scapegoating" her in the letter to the OIG Monitor, "Lincare managed to avoid paying FCA penalties for each of the violations disclosed" in the Letter. *See* Sur-Reply at 13-14. This is erroneous, as it has never been established, whether in the SDNY Settlement or in the July 2021 letter to the OIG Monitor, that Lincare violated the FCA in the first place, and Lincare denies having done so. There were therefore no penalties at issue, and Plaintiff's broad-brush attempt to skip over material elements of the FCA should be rejected. It is also ignores that Lincare was required to disclose "substantial overpayments" pursuant to its Corporate Integrity Agreement, and that the OIG Letter clearly disclosed to the OIG Monitor that "clinical employees failed to appropriately document patient compliance with the prescribed ventilator therapy and, when non-compliance was observed, to follow-up with the patent and then the prescriber." *See* Sur-Reply Opp. at 4 n.4. Any potential reference to Plaintiff in the Letter does not change that Lincare disclosed substantial overbillings based on ventilator non-compliance and lack of documentation.

5.      <u>Plaintiff mischaracterizes Lincare's Rule 408 argument that the Settlement is not admissible for Plaintiff's purposes of determining liability or as character evidence.</u>  In her Sur-Reply, Plaintiff spends pages arguing that the SDNY Settlement, including the Admitted Conduct, is admissible under Fed. R. Evid. 408.  This mischaracterizes Lincare's argument and misses the mark.

Contrary to Plaintiff's assertions, Lincare did not argue that the factual admissions in the SDNY Settlement were inadmissible for all purposes.  Lincare stated simply and accurately, "[n]or is the fact of Lincare's settlement admissible *for the purpose of indicating it was liable for any improper conduct in this matter*, whether on summary judgment or otherwise.  Sur-Reply Opp. at 3-4 (emphasis added) (citing to Fed. R. Evid. 408's statement that evidence of settlement is not admissible "either to prove or disprove the validity or amount of a disputed claim").  None of the cases in Plaintiff's full-page string cite counter or even address this basic application of Rule 408.  Sur-Reply at 7-8.[10]  While Plaintiff attempts to argue that the SDNY Settlement is being used "for another purpose" as permitted by the Rule, and spends nearly a page reciting case law, she fails to identify any purpose for which the Settlement Stipulation would be admissible.

Further, even if Plaintiff had tried to fit the SDNY Settlement into a permissible purpose, her true intentions are clear.  Plaintiff points to the SDNY Settlement and the Admitted Conduct as evidence of Lincare's character, and to suggest that Lincare acted in accordance with that character here.  *See, e.g.*, Sur-Reply at 11 n.3 (listing prior *qui tam* complaints against Lincare to suggest that Lincare routinely and systemically engages in false billing).  This is expressly

---

[10] Plaintiff argues that the Settlement Stipulation contains admissions that are not "statement[s] made during compromise negotiations," but this quotes the incorrect part of Rule 408.  These admissions are part of a settlement agreement that reflects offering valuable consideration in an effort compromise a claim, and clearly fall within the ambit of Rule 408's prohibition on being offered to suggest liability in this matter.

11

inadmissible, as Fed. R. Evid. 404(a)(1) states that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Such character evidence cannot be used to show propensity, and may only be admissible "for a permitted purpose, such as to prove motive . . . absence of mistake, or lack of accident" if such an exception applies. See *U.S. v. Chin*, 2023 WL 2633594 (S.D. W. Va. Mar. 24, 2023). None of those exceptions apply here.

Once again, Plaintiff misapprehends her own claims when she attempts to use this evidence to show that Lincare retaliated against her. As discussed in the Sur-Reply Opposition, "Plaintiff claims that her termination was in retaliation for making reports of overbilling. For the SDNY Matter to support that Lincare had a routine corporate practice of retaliation, there must also be evidence of retaliation against the whistleblowers in the SDNY Matter. Relators in the SDNY Matter, however, did not bring any retaliation claim or assert any allegations of retaliation." *See* Sur-Reply Opp. at 6-7. It is therefore impermissible for Plaintiff to seek to admit the SDNY Settlement as evidence that her termination was retaliatory.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in the Summary Judgment Memorandum and Reply, the Court should enter judgment as a matter of law in favor of Lincare Inc. and against Plaintiff Jillian Watkins on all claims.

        Respectfully submitted,

        LINCARE INC.,

        By its attorneys,

        */s/ Vivian H. Basdekis*
        Vivian H. Basdekis (WVSB #10587)
        FROST BROWN TODD LLP
        500 Virginia Street Suite 1100
        Charleston, West Virginia 25301
        (304) 345-0111 (t)
        (304) 345-0115 (f)
        vbasdekis@fbtlaw.com

        Lawrence M. Kraus (PHV-51108)
        Lea Gulotta James (PHV-51109)
        FOLEY & LARDNER LLP
        111 Huntington Avenue
        Boston, Massachusetts 02199
        (617) 342-4000 (t)
        (617) 342-4001 (f)
        lkraus@foley.com
        ljames@foley.com

Dated: March 21, 2024        *Counsel for Lincare Inc.*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT HUNTINGTON

| | |
|---|---|
| JILLIAN WATKINS, ) | |
| Plaintiff, ) | |
| v. ) | C.A. No. 3:22-cv-00109 |
| ) | |
| LINCARE INC. ) | |
| Defendant. ) | |

## CERTIFICATE OF SERVICE

I, Vivian H. Basdekis, hereby certify that on this 21st day of March, 2024, I caused the foregoing DEFENDANT'S RESPONSE TO PLAINTIFF'S SUR-REPLY IN OPPOSITION TO LINCARE INC.'S MOTION FOR SUMMARY JUDGMENT to be served on counsel of record through the CM/ECF system, which will provide notification to the following:

Rodney A. Smith
M. Alex Urban
ROD SMITH LAW PLLC
108 ½ Capitol Street, Suite 300
Charleston, WV 25301
rod@lawwv.com
aurban@lawwv.com
*Counsel for Jillian Watkins*

Guy R. Bucci
Ashley N. Lynch
108 ½ Capitol Street, Suite 200
Charleston, WV 25301
guy.bucci@outlook.com
ashleynlynch@outlook.com
*Counsel for Jillian Watkins*

                          */s/ Vivian H. Basdekis*
                          Vivian H. Basdekis (WV State Bar 10587)